IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **ANDREW WHITE**<br>4751 Glenway Ave.<br>Cincinnati, Ohio | : <br> : <br> : <br> : | Case No. <br><br> Judge |
| **VENA JONES-COX**<br>3655 Erie Ave.<br>Cincinnati, Ohio | : <br> : <br> : <br> : <br> : | Magistrate <br><br> **VERIFIED COMPLAINT** |
| **CINCINNATUS PROPERTY MANAGEMENT, LTD**<br>4751 Glenway Ave.<br>Cincinnati, Ohio | : <br> : <br> : <br> : <br> : <br> : | Exhibit 1: Relevant City Ordinances <br><br> Exhibit 2: Correspondence threatening and imposing fines in response to communication of crime |
| **TASHAZ, LLC**<br>3707 Warsaw Ave.<br>Cincinnati, Ohio | : <br> : <br> : <br> : | Exhibit 3: Correspondence displaying over-collection of Alarm License Fees |
| **PROFFITT REAL ESTATE SERVICES, INC.**<br>3707 Warsaw Ave.<br>Cincinnati, Ohio | : <br> : <br> : | Exhibit 4: Verifying Affidavit of Plaintiff Andrew White |

      **Plaintiffs,**

-vs-

**CITY OF CINCINNATI, OHIO,**
801 Plum Street
Cincinnati, Ohio

*and*

**SONYA WALKER**, *in her official capacity as Alarm Administrator of the City of Cincinnati, Ohio, and in her personal capacity*
801 Plum Street
Cincinnati, Ohio

      **Defendants.**

Now come Plaintiffs, ANDREW WHITE, VENA JONES-COX, CINCINNATUS PROPERTY MANAGEMENT LTD, PROFFITT REAL ESTATE SERVICES, INC, and TASHAZ, LLC (collectively,

1

the "Plaintiffs"), and for their Complaint against the CITY OF CINCINNATI, OHIO and administrator SONYA WALKER ("defendants") allege as follows:

## INTRODUCTION

1. This is an action for declaratory judgment, preliminary and permanent injunction, and restitution pursuant to R.C. 2721, R.C. 2727, R.C. 2305.7, and 42 U.S.C. §1983, arising from Defendants' unconstitutional official conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

2. Specifically, Defendants maintain that they may restrain Plaintiffs' right to communicate in defense of themselves, their families, and their homes and businesses through use of a home security alarm arrangement, whether to the City Police Department or directly to potential burglars.

3. More specifically, the City forbids communication through a home security alarm system or through an agent hire by the homeowner unless the citizen *first* pays a tax on the right to engage in such communication to the City of Cincinnati.

4. Communicating information indicating a crime or potential crime, if done through an alarm agent, is subject to a fine of $100 to $800 per communication for those who do not first pay the City's tax on the right to communicate.

5. Citizens such as the Plaintiffs are required to pay the tax and/or fee on alarm system use irrespective of whether they or their agents communicate to City Police and irrespective of whether they have already paid taxes toward the cause of police protection.

6. Due to Defendants' official and individual conduct, Plaintiffs have suffered and will continue to suffer irreparable harm to their rights under the First Amendment and Fourteenth Amendment to the United States Constitution and Sections 1, 2, 11, 16 and 19 of Article I of the Ohio Constitution and Section 2, Article XII of the Ohio Constitution.

7. This harm may only be remedied by a ruling from this Court, and Defendants must be immediately and permanently be enjoined from restricting Plaintiffs' protected expression in this manner.

## PARTIES

8. Plaintiff Andrew White is a resident of Cincinnati, Ohio, and the owner of interests in the home where he resides and numerous residential rental and other investment properties within the City of Cincinnati.

9. The City has imposed fines upon Mr. White for communicating evidence of potential criminal activity without first paying the fee to acquire a government alarm system license at his rental home located at 1279 Rutledge Avenue in the City of Cincinnati.

10. Due to the City's licensing fee, Mr. White has been chilled from acquiring the means to communicate in defense of his home at 4751 Glenway, and his rental homes at 5123 Glenshade, 2718 Ruberg and 1652 Jonathan, all within the City of Cincinnati.

11. Mr. White owns interests in each of the foregoing homes either directly or through his ownership interest in Cincinnatus Property Management, Ltd.

12. Mr. White regularly purchases one-to-two homes annually within the City of Cincinnati, whether directly or through a business entity he owns or controls.

13. Mr. White owns interests in several residential homes in high-crime neighborhoods where the use of an alarm system would be especially helpful in curtailing crime.

14. In each scenario where Mr. White purchases or owns a home, the City's alarm system registration tax and/or fee suppresses his capacity to fully defend these homes from crime by taxing (1) communication directly to potential criminals; and (2) communication of information reflecting potential criminal activity to the City Police Department.

15. Plaintiff Vena Jones-Cox is the owner of PROFFITT REAL ESTATE SERVICES, Inc. and TASHAZ, LLC, which together own interests in business property located at 3707 Warsaw Avenue within the City of Cincinnati, Ohio.[1]

16. Plaintiff Vena Jones-Cox resides at a home within the City located at 3655 Erie Avenue and has paid the alarm fee of $50 for the home, directly or through a business entity she owns, most recently on or about August 16, 2017.

17. Plaintiff Vena Jones-Cox has paid a $100 alarm registration and licensing fee, directly or through a business entity she owns, most recently on or about January 17, 2018 to the City on behalf of Tashaz, LLC and Proffitt Real Estate Services, Inc.

18. The foregoing Plaintiffs would prefer to not pay the security alarm system fee and/or tax and have not paid it voluntarily; rather they have paid it only because it is a legal prerequisite to communicating so as to protect their property from criminal attack.

19. The City of Cincinnati is a municipal corporation in Hamilton County organized under the Constitution and laws of the State of Ohio.

20. The City is a state actor and is a municipal corporation unprotected by sovereign immunity for the purposes of this action.

21. Defendant Sonya Walker is, and has been at all times relevant to the facts at issue in this case, the "False Alarm Administrator" for the City of Cincinnati.

22. The actions of Defendant Walker described herein were taken pursuant to official conduct on behalf of the City of Cincinnati, and were exercised under color of law.

---

[1] Ms. Jones-Cox owns 100 percent of Proffitt. Tashaz, LLC maintains an ownership interest in the building that Proffitt leases due to its beneficial interest in the applicable trust.

23. At all times relevant to the allegations in this Complaint, each and all of the Defendants' acts alleged herein are attributed to Ms. Walker acting under the color, authority, and pretense of regulations, customs, usages, and policies of the City.

24. Ms. Walker has and continues to undertake specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in her individual capacity, as part of her official duties and responsibilities as an employee or agent of the City, and in her official capacity of adopting and implementing a policy, practice or custom of the City.

25. More specifically, Ms. Walker has ordered Plaintiffs to pay alarm registration fees or otherwise face fines of up to $800 per alarm-related communication.

26. All actions by the Defendants described herein were undertaken under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this case pursuant to R.C. 2721, R.C. 2727, R.C. 2305, and 42 U.S.C. §1983 and 1988, arising from Defendants' unconstitutional official conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

28. Venue is proper within this County and division because (a) the Plaintiffs and Defendants are situated within this county; and (ii) all of the claims asserted by Plaintiffs arose within this county.

## FACTUAL ALLEGATIONS

29. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

### *Cincinnati's Encouragement of Communications Reporting Crime*

30. The City of Cincinnati and its Police Department claim a governmental interest to "increase safety, improve the community's quality of life and prevent crime through a myriad of collaborative, engaged, evidence-based policing strategies. . . . the Cincinnati Police Department takes pride in continually

advancing and encouraging innovative strategies to prevent crime." See *www.Cincinnati-OH.gov/police/about-police.*

31. The Cincinnati Police Department encourages citizens to report potential criminal activity, even boasting that its "Online Crime Reporting System is designed to make it easier and more convenient to file a police report without leaving home…" See *www.Cincinnati-OH.gov/police/online-reporting.*

32. The City encourages citizens that "if a crime is in progress . . . dial 9-1-1 immediately," and further encourages citizens to call its non-emergency number otherwise ("if non-emergency call 513-263-8160"). *Id.* The City further cautions that "filing a false police report is a crime." *Id.*

33. Finally, on its homepage, the Cincinnati Police Department conspicuously expresses in bold and capitalized lettering **"WE WANT TO HEAR FROM YOU"**, and displays a list of phone number as "quick contacts." *Id.*

### *Cincinnati's Suppression of Communication Reporting Crime when through a Home Security Alarm Signal or Agent*

34. In Cincinnati, no person is permitted to, without first paying a significant licensing fee, (1) "request a police response" or (2) signal the occurrence or potential occurrence of a crime or emergency through an alarm. Section 8-7-1-A4(1)(e).

35. More specifically, a homeowner may not (1) "alert[] an entity which notifies a government organization of [an unlawful act's commission or occurrence];" (2) "give a signal, either visual, audible or both, or cause[] to be transmitted a signal;" or (3) "give[] a signal [of an unlawful act, or of an emergency], either visual, audible, or both only at the alarm site and which does not alert a governmental organization." See Sections 807-1-A2; 807-1-A4(2)(a); 807-1-L.

36. Communication signaling the occurrence of an unlawful act or emergency does not result in any penalty unless it is done through an alarm agent employed by the homeowners' alarm company. If done

6

through an alarm or alarm agent, the homeowner who communicates without having paid the licensing fee is fined $100. Section 807-1-A4(2)(d).

37. The City exempts from such licensing, fees, and penalties "Police Direct Connect Alarms," which it defines as "alarm systems which terminate at the Cincinnati Police Division Communications Section." Section 807-7. The City also issues stiff penalties when it deems the communication signaling crime to be "false": $75 initially and up to $800 after multiple false alarms. Section 807-1-F; 807-11.

38. Further, the City charges double to businesses who use security alarm agents to inform the City of criminal activity: "*residential* alarm users shall pay a non-refundable, non-transferable, user and location-specific biennial fee of $50 . . . Non-residential Alarm Users shall pay a non-refundable, non-transferable, user and location-specific biennial fee of $100." Section Section 807-1-A4(2)(b) and (c).

39. In assessing $50 and $100 licensing fees upon protected expression, the City dramatically overbills. The City's own public records display that all funds flow directly into the City's "General Funds Account," rather than towards alarm-related expenses. *See Exhibit 3.*

40. The City summarizes the "total cost to administer" the alarm system program as $192,403.31 per year. *See Exhibit 3.*

41. However, the City has collected $488,665 in alarm registration fees in 2015, $242,901 in alarm registration fees in 2016, and $476,098 in alarm registration fees in 2017. *See Exhibit 3.* Thus, the City typically collect more than double the costs of administering the program in alarm registration fee revenue alone (this number does not include false alarm fees).

42. The foregoing alarm revenue does not include revenue derived from fines for unregistered alarms and false alarms or fees paid by Alarm Businesses pursuant to Section 807-1-A4(1).

### *Cincinnati's Enforcement of its Restraint on Crime Reporting against Plaintiffs*

43. Defendants have imposed fees upon Plaintiffs as a condition of their exercise of their right to communicate evidence of crime through an alarm agent or signal.

44. Defendants have, as recently as July 30, 2018, ordered Plaintiffs to pay alarm registration fees or otherwise face fines of up to $800 per alarm-related communication. See Exhibit 2

45. Due to Defendants' policies and threats, Mr. White has curtailed alarm-related communications, even though such communications are highly beneficial if not necessary to the protection of himself and his property.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTION

46. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

47. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States and Ohio Constitutions. A judicial declaration is necessary and appropriate at this time.

48. Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to communicate to a potential criminal that he has been detected and to communicate evidence of a potential criminal act to the police department.

49. In order to prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued declaring unconstitutional the Defendants' policies and practices restraining crime reporting without prior payment of an "Alarm Registration Fee."

50. Furthermore, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendants from enforcing their restrictions on Plaintiffs' expressive activities to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiffs' constitutional rights.

51. Specifically, this Court should preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with

them who receive actual notice of the injunction, from engaging in any further official conduct that threatens, attempts to threaten, and/or actually interferes with Plaintiffs' protected communication, including but not limited to the use of an alarm system to signal to would-be criminals that they have been detected and to signal to police that a crime may be occurring at one's home or office.

## COUNT II
### VIOLATION OF RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
(42 U.S.C. § 1983)

52. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

53. Telephone calls are protected speech.

54. Gestures made towards the police, including telephone calls, are protected speech.

55. Signaling detection of a criminal upon a certain premises is protected speech.

56. The City's threats have chilled and threaten to further silence Plaintiffs' protected speech, expression, and other communication including through use of a security alarm to (1) notify potential criminals that a home is protected by such an alarm and that they have been detected there; and (2) inform public authorities of potential criminal conduct.

*Plaintiffs' Communications in Self-Defense are Constitutionally Protected*

57. The First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution protect Plaintiffs' speech, expression, and communication including their right to (1) use a signal displaying the presence of a security alarm to a potential burglar; and (2) use a hired alarm company agent to telephonically inform the police that a potential crime is in progress.

58. Expression in defense of oneself and one's property from criminal threats is as important as political speech, insofar as the absence of such expression increases one's exposure to the risk of bodily injury, loss of valuable property, and possibly even the loss of life itself.

59. For almost a century, Ohio courts have affirmed that Ohioans maintain a constitutional right to hire others to defend their private property: In 1919, in *In Re W.C. Reilly*, the Court relied upon the language of Article I, Section I to invalidate a municipal ordinance that attempted to criminalize the conduct of "employing any person as a special guard during any industrial disturbance or strike, unless such person shall first have been empowered to act as such special guard by the director of public safety."[2] The Court reasoned that "the assumption heretofore has been that any one was acting entirely within his fundamental rights when he sought, without let or hindrance, from any one, to protect his property."[3]

***Defendants' demand that Plaintiffs pay a licensing fee as a prerequisite to protected communication in defense of themselves and their homes and businesses transgresses the First Amendment and Section 11, Article I of the Ohio Constitution.***

60. Laws licensing protected expression and the nature and amount of a fee associated therewith are subject to First Amendment scrutiny.

61. A municipality is liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018 (1978).

62. "Municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Id.*

63. Threatened deprivation of constitutional rights that chills speech is a First Amendment harm. *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738 (6th Cir. 2004).

64. A state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression.

65. The City's prior restraint on communications providing information on potential criminal activity through an alarm agent or to a potential criminal are subject to strict scrutiny because the restraint is

---

[2] *In Re W.C. Reilly* (1919), 31 Ohio Dec. 364, 23 Ohio N.P. (N.S.) 65.
[3] Id.

10

(1) "a prior restraint;" (2) a restraint predicated upon the *content* of the communication; and (3) a restraint predicated upon *the identity of disfavored speakers*, i.e. alarm agents telephoning on behalf of aggrieved homeowners.

66. The City's restrictions on expression do not serve a compelling interest: the City has a compelling interest in *encouraging* rather than *suppressing* communications providing information on potential criminal activity within the City.

67. Even if the City's restrictions on expression did serve a compelling governmental interest, the licensing fee is not narrowly tailored to achieve that interest.

68. Non-commercial communication may not be suppressed merely because government presumes that such communication could be false.

69. The alarm licensing fee grossly exceeds the costs of administering the alarm licensing program, and is therefore not narrowly tailored to achieve any governmental interest.

70. The alarm licensing fee bears no relationship to homeowners' use of city services in a manner that differs from how citizens without security alarms utilize those same city services.

71. The alarm licensing fee targets only those who speak to defend their property through use of an alarm signal or alarm company agent. Those who speak through other means, such as a cellular phone, land line, or neighbor, family member, or security guard are exempt from paying the licensing fee.

72. The alarm licensing fee of $100 per *business* is particularly untailored to any governmental interest, given the absence of any evidence or other reason to believe that businesses impose *twice* the cost on the City that residential homeowners impose.

73. The alarm licensing fee is not narrowly tailored because those who work, live, or own property within the City already pay taxes that fund police protection.

11

74. The alarm licensing fee is both underinclusive and overinclusive with respect to any governmental interest: the fee singles out those who communicate through security alarms and security alarm company agents for a special monetary exaction no applicable to other analogous communications.

75. A fee that exceeds the cost the speaker imposes upon the governmental entity imposing the charge is neither narrowly tailored nor reasonable.

76. In the absence of this Court's relief, Plaintiffs are, unless they pay the City's licensing fee, prohibited from signaling the presence of a home security alarm to criminals or communicating evidence of criminal activity to the police; further they face significant civil penalties upon each occasion that they so communicate.

77. The Defendants' threats of $100 per-day fines, and offer to abstain from such fines only if Plaintiffs' sacrifice their clear First Amendment right to political speech, is an actionable cause for redress.

## COUNT II
## UNCONSTITUTIONAL TAXATION
### (Section 2, Article XII of the Ohio Constitution and Sections 2, 16, and 19 of Article I of the Ohio Constitution)

78. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

79. The Ohio Supreme Court has indicated that "a 'fee' is in fact a 'tax' if it exceeds the 'cost and expense' to government of providing the service in question." *Granzow v. Bureau of Support of Montgomery Cty.*, 54 Ohio St. 3d 35, 38–39 (1990), citing *State, ex rel. Gordon, v. Rhodes* (1952), 158 Ohio St. 129; *Cincinnati v. Roettinger* (1922), 105 Ohio St. 145, 154, 137 N.E. 6, 8.

80. To the extent that the charge exceeds the costs of government to providing the service in question, the charge is an impermissible fee, a taking of private property without due process, and an impermissible tax, whether construed as a non-uniform tax on private property in violation of the Section 2, Article XII of the Ohio Constitution or otherwise.

12

81. The City's alarm license "fee" is unconstitutionally non-uniform because (1) the "fee" only applies to private property secured by an alarm system; and (2) the "fee" taxes business property secured by an alarm at twice the rate that residential property is taxed.

82. Further, the City routinely collects an amount twice the amount necessary to cover the costs of the alarm registration program, and places collected funds into the general revenue fund to fund general expenses of the City of Cincinnati.

83. The City takes no action to calibrate the alarm registration and licensing assessments to the actual costs of the program; nor does it return citizens' funds when it over-collects funds.

84. The City supplies the same services - - police protection in response to telephone calls reporting crime - - irrespective of whether or not a citizen pays the alarm registration "fees" and irrespective of whether the citizen utilizing alarm communications has already funded police protection through payment of various local taxes.

85. Plaintiffs already pay for police protection through their local property taxes, which contain line-items for the City of Cincinnati and the "crime info center," and through local income taxes.

## COUNT III
## UNJUST ENRICHMENT AND RESTITUTION

86. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

87. Defendant City of Cincinnati has acquired and/or is in possession of funds that it is not entitled to retain. See, generally, *Thompson v. City of Oakwood*, No. 3:16-CV-168, 2018 WL 776375 (S.D. Ohio 2018).

88. A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, syllabus. *Accord Judy v. Ohio Bur. of Motor Veh.*, 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.*, 62 Ohio St.3d 97 (1991).

13

89. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

90. Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.*, 2012-Ohio-1866, ¶ 33.

91. Through its unconstitutional licensing fee assessments, Defendant City of Cincinnati has acquired funds rightfully belonging to Plaintiffs.

92. Defendants acquired these funds under the pretense of charging a "fee" for the privilege of citizens' speaking out in defense and securing of themselves, their homes, and their businesses. of mandatory unconstitutional searches of Plaintiffs' properties.

93. Defendants unconstitutionally extracted $50 from named Plaintiff Vena Jones-Cox as a prerequisite to her exercise of her right to protect herself and her property with a home security alarm at her home on 3655 Erie Avenue in Cincinnati, Ohio.

94. Defendants unconstitutionally extracted $100 from named Plaintiff Vena Jones-Cox as a prerequisite to her exercise of her right to protect herself and her property with a security alarm at her office located at 3707 Warsaw Avenue in the City of Cincinnati.

95. It would be unconscionable for the City of Cincinnati to retain and/or abstain from returning the permitting fees acquired from Plaintiffs and others.

96. Claims for the refund of such fees associated are equitable in nature, meaning that the law of restitution requires that such fees be returned to those who have paid them.

14

97. Plaintiffs are entitled to a refund of all unlawfully-coerced licensing fees paid to Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and that this Court:

(1) Declare that City of Cincinnati Codified Ordinance Section 807-1-A4(2) is unconstitutional on its face, unconstitutional as applied by Defendants, and unconstitutional as applied to Plaintiffs, insofar as it prohibits communications reporting crime and alerting potential criminals on-site without prior payment of an arbitrary licensing fee.

(2) Issue a preliminary and permanent injunction prohibiting Defendants from enforcing Section City of Cincinnati Codified Ordinance Section 807-1-A4(2) so as to suppress communications reporting crime and alerting potential criminals on-site without prior payment of an arbitrary licensing fee.

(3) Issue a preliminary and permanent injunction prohibiting Defendants from enforcing Section City of Cincinnati Codified Ordinance Section 807-1-A4(2) so as to impose fines upon those who utilize security-alarm communications without making prior payment of the alarm licensing fee.

(4) Declare unconstitutional and enjoin the $50 residential alarm licensing fee and $100 business licensing fee articulated in Section 807-1-A4(2)(b) and Section 807-1-A4(2)(c) on the grounds that it (1) is an impermissible restraint on protected expression; (2) is an arbitrarily excessive fee; and/or (3) is an unlawful tax mislabeled as a "fee."

(5) Assess against Defendants and award to Plaintiffs nominal damages as compensation for the deprivation of their clearly-protected constitutional rights.

(6) Declare that Plaintiffs and others are entitled to a refund of all fees and fines, other than false alarm fines, paid pursuant to the unlawful alarm registration licensing requirements challenged here.

(7) Order the return of fees paid by Plaintiffs and others to Defendant City of Cincinnati, to the extent that the City has been unjustly enriched;

E-FILED 07/31/2018 03:57 PM / CONFIRMATION 764278 / A 1804206 / COMMON PLEAS DIVISION / IFI

(8)     Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees;

(9)     Award nominal damages against Defendants and in favor of Plaintiffs to compensate Plaintiffs for violations of their constitutional rights;

*and*

(10)    Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

/s/ *Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*
*Counsel of Record*

/s/ *James A. Flax*
James A. Flax (0078445)
3707 Warsaw Ave
Cincinnati, Ohio 45205
Tel: (513)503-7522
*JARFlax@Gmail.com*
*Local Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing verified complaint filed in this action has been served upon the following, via e-mail, on the date of filing:

Terry Nestor, Esq.
City of Cincinnati
*Terry.Nestor@Cincinnati-OH.gov*

Paula Boggs Muething
City of Cincinnati Solicitor
*Paula.BoggsMuething@Cincinnati-OH.gov*

Respectfully submitted,

/s/ *Maurice A. Thompson*
Maurice A. Thompson (0078548)